■ NELSON PANG, an Infant, by His Mother and Natural Guardian, JULIA PANG, Respondent-Appellant, v MAIMONIDES MEDICAL CENTER-MAIMONIDES HOSPITAL et al., Respondents, et al., Defendant. NEW YORK ·CITY DEPARTMENT OF SOCIAL SERVICES, Nonparty Appellant-Respondent. — In a medical malpractice action, the New York City Department of Social Services (hereinafter the DSS) appeals from so much of an order of the Supreme Court, Kings County (Levine, J.), dated March 29, 1984, as denied its cross motion for discovery, and plaintiff cross-appeals from so much of the same order as denied his motion to vacate a lien upon the proceeds of a proposed settlement of the action claimed by the DSS.

Order affirmed, insofar as appealed from, without costs or disbursements, and without prejudice to a more limited application by the DSS for discovery in accordance herewith, if it be so advised.

Plaintiff Nelson Pang, an infant, by his mother, Julia Pang, brought this suit against Maimonides Medical Center-Maimonides Hospital (hereinafter Maimonides), Dr. Oscar Schwartz and Dr. Kyae Won Pang alleging that while he was an infant under the care of Dr. Schwartz at Maimonides, he sustained permanent central nervous system damage due to negligence in failing to properly treat him and in failing to obtain an informed consent to the treatment rendered to him. According to plaintiff's bill of particulars, the infant sustained "severe, significant, insult and injury to his central nervous system including severe retardation, spasticity, a severe heart condition, sever[e] mental retarda[t]ion and gastrointestinal problems". The Statute of Limitations had run with respect to the parent's claim for medical expenses, and no claim for past medical expenses was made in either the complaint or the bills of particulars. After several days of testimony at trial, settlements were reached with Maimonides and Schwartz. (The cause of action against Dr. Kyae Won Pang was dismissed on consent.)

The stipulation of settlement between plaintiff and Maimonides, which was entered into in open court on December 5, 1983, was structured to consist of monthly and lump-sum payments. Specifically, the settlement provides for a payment of $3,718 per month for the rest of the infant plaintiff's life with 20 years of payments guaranteed to the next of kin if he sooner dies. Large, lump-sum payments are also guaranteed to the next of kin in the event the infant does not survive, and escalate progressively with time. At years 10 and 15 the infant or his survivors are to

receive payments of $100,000. At years 20 and 25 the infant or his survivors are to receive payments of $200,000. At years 30 and 35 the infant or his survivors are to receive payments of $250,000. In addition, Maimonides agreed to pay legal fees of $266,666.67. The plaintiff agreed to hold Maimonides harmless from the $312,000 lien of the DSS. At the proceedings during which the stipulation settling the case as between plaintiff and Maimonides was spread on the record, plaintiff's attorney asked the mother: "And you understand * * * that there is a lien on this case at present in the amount of $312,000 plus dollars from the Department of Social Services that has not been satisfied and that we are releasing the Maimonides Hospital from this obligation?". Mrs. Pang replied "Yes, I understand."

The stipulation of settlement of the action as between plaintiff and Dr. Schwartz, made on December 14, 1983, provided for a lump-sum payment of $375,000. Of that money, $125,000 was for legal fees and the balance of $250,000 was for the plaintiff.

Prior to the stipulation of settlement, the DSS had served notices of lien upon the proceeds of the personal injury action totaling $305,255.11, representing hospital expenses paid on behalf of the infant plaintiff. During the latter stages of settlement negotiations, representatives of the DSS were present and attempted to work out a compromise of its lien; however, no agreement was reached.

On or about December 22, 1983, plaintiff moved for an order vacating the lien of the DSS. Thereafter, DSS cross-moved for "the right to proceed with discovery against the parties who entered into the settlement of this action and the insurance carriers which provided funds for the settlement, on the issue of whether any part of the lien of the Department of Social Services should be vacated under the standards of *Baker v. Sterling,* 39 N.Y.2d 397". The Supreme Court denied both the motion and cross motion, and ordered a hearing to determine whether the lien of the DSS, "or any portion thereof, is to be satisfied from the proceeds of the infant-plaintiff's settlement".

The Supreme Court properly denied plaintiff's motion to vacate the lien of the DSS. In *Baker v Sterling* (39 NY2d 397, *supra*), the Court of Appeals held that sections 104 and 104-b of the Social Services Law must be read in conjunction with each other, so that when the DSS seeks to recover either directly in an action or proceeding, or indirectly by enforcing a lien in a suit by a recipient of public assistance, its right to recover is subject to the limitations imposed by section 104 of the Social Services Law.

Therefore, when the recipient is an infant, no right will accrue and no lien will attach unless the infant possessed money or property in excess of his reasonable requirements at the time the assistance was granted. The Court of Appeals went on to state that that portion of an infant's award or settlement representing reimbursement for medical expenditures must be considered "excess" property within the meaning of subdivision 2 of section 104 of the Social Services Law which is recoverable by the DSS, reasoning (pp 405-406):

"This means that when the Department seeks recovery from an infant for public assistance he has received, no right will accrue, and no lien will attach unless the infant possessed money or property in excess of his needs at the time the assistance was granted. The first question then is whether the infant possessed 'property' at the time he became a recipient, and the second is whether the property, or any portion of it, can be considered excess funds.

"If the infant's property consists of a cause of action for personal injury (*Mnich v American Radiator Co.*, 263 App Div 573, affd 289 NY 681), then the first requirement is met if the cause of action accrued prior to the time he became a recipient. And if he has obtained a judgment compensating him for the personal injuries and medical expense, actually paid by the Department, that portion of the award representing reimbursement for medical expenditures must be considered 'excess property' under the statute.

"*An award for personal injuries simply compensates the infant for his loss by providing a fund to satisfy his anticipated needs occasioned by the injury. By definition this fund can never be considered 'money or property in excess of his reasonable requirements.' This is not true of course of the medical expenses which have been paid by another. This expenditure involved no loss to the infant. And although medical expenses are a necessary item* (Social Services Law, § 363) *once the expenses have been paid by the Department, there is no 'need' for the infant to retain the amount received in reimbursement. In our view the Legislature never intended that the infant retain this money free of lien or recovery by the Department and therefore this portion of the award must be considered 'excess' funds within the meaning of the statute.*

"*The same rules apply to the settlement of an infant's claim. That portion of the settlement which represents a compromise of the claim for medical expenses is subject to lien and recovery by the Department. That portion representing a compromise of the infant's claim for personal injury is beyond the Department's reach*" (emphasis added).

In view of the fact that the record is unclear as to what portion, if any, of the settlement of the infant's claim represented compensation for past medical expenses which were paid by the DSS, the Supreme Court properly ordered a hearing on the issue. We note in this regard that while plaintiff's complaint contained no claim for past medical expenses, plaintiff introduced evidence at trial as to past medical expenses. Also, the settlement negotiations were filled with references to the lien, and attempts to compromise it. Significant also was the fact that while plaintiff submitted an affirmation from the attorney for Dr. Schwartz which indicated that his client's settlement with plaintiff did not include reimbursement for medical expenses, no such affirmation was submitted from Maimonides. In this regard, we reject plaintiff's contention that, as a matter of law, the fact that a claim for past medical expenses was not asserted in the complaint is conclusive. As Judge Fuchsberg indicated in his concurring opinion in *Marsh v La Marco* (39 NY2d 397, 415, n 4, decided with *Baker v Sterling, supra*) "[G]iven the statutory authorization to invade the infant's funds provided to the Department by subdivision 2 of section 104, albeit within limitations, nothing turns on whether the infant has formally pleaded a cause of action for his medical expenses or not" (see, also, *Simmons v Aiken,* 100 AD2d 769).

We also note that the Supreme Court properly denied the application of the DSS for discovery inasmuch as its request for relief was overbroad. While the DSS, which was not present during the initial settlement negotiations, is entitled to reasonable discovery to enable it to prepare for the hearing on the issue of what portion of the settlement represents compensation for past medical expenses which it paid (see *Witt v Triangle Steel Prods. Corp.,* 103 AD2d 742), the present request for the DSS for discovery is virtually identical to the one found overly broad in *Simmons v Aiken* (100 AD2d 769, *supra*). In this regard, our affirmance of the order, insofar as appealed from by the DSS, is without prejudice to a more limited application by it for discovery. Mangano, J.P., Gibbons, O'Connor and Lawrence, JJ., concur.